IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR11-291-S-EJL |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| **DANIEL RODRIGUEZ-PEREZ,** | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Before the Court in the above-entitled matter is the Defendant's Motion to Dismiss Indictment filed on April 25, 2012. (Dkt. 15.) The parties have filed responsive briefing and the matter is now ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this Motion shall be decided on the record before this Court without oral argument.

**Memorandum Order - 1**

## FACTUAL AND PROCEDURAL BACKGROUND

The Defendant Daniel Rodriguez-Perez applied for and was granted temporary resident status in the United States on April 22, 1988 as a Special Agricultural Worker ("SAW") under § 210 (8 U.S.C. § 1160) of the Immigration and Nationality Act ("INA"). On October 17, 1991 Mr. Rodriguez's status was adjusted to that of Lawful Permanent Resident ("LPR").

Thereafter, on June 9, 1994, Mr. Rodriguez was convicted of Conspiracy to Traffic in Heroin and sentenced to ten years in prison with three years determinate. The Immigration and Naturalization Service issued an Order to Show Cause alleging Mr. Rodriguez was subject to deportation as a result of the conviction. On July 10, 1995, Mr. Rodriguez appeared before an Immigration Judge ("IJ"). The proceedings began as a group hearing with general advisements being given to all who were appearing. The IJ made inquiries of individuals, including Mr. Rodriguez, concerning the particulars of their Orders to Show Cause and eventually determined Mr. Rodriguez was deportable. The IJ then addressed the relief from deportation for those aliens who had LPR status.

In his remarks to another alien similarly situated to Mr. Rodriguez having attained LPR status through the SAW program, the IJ discussed the qualifications for waiver under § 212(c). The IJ determined neither that alien nor Mr. Rodriguez

**Memorandum Order - 2**

qualified for § 212(c) relief because they had not satisfied § 212(c)'s seven year domicile requirement; concluding both aliens' years of residency under the SAW program did not count towards the required seven years of domicile by distinguishing a recent decision in *Ortega de Robles v. INS*, 58 F.3d 1355, 1359 (9th Cir. 1995). Mr. Rodriguez was then ordered to be deported. The IJ advised him of his right to appeal and Mr. Rodriguez waived the same. After serving the remainder of his state prison sentence, Mr. Rodriguez was deported on April 4, 1996.

Thereafter, on January 11, 2005, Mr. Rodriguez was found in South Carolina and indicted for illegal re-entry under 8 U.S.C. § 1326(a) and (b)(2). Mr. Rodriguez plead guilty to the charge and, on June 15, 2005, was sentenced to 33 months in prison. He was again removed on June 28, 2007 pursuant to a reinstatement of the prior order of deportation entered on July 10, 1995. Most recently, on November 22, 2011, Mr. Rodriguez was located in the District of Idaho which led to the charge filed in this case.

The Indictment charges the Defendant Daniel Rodriguez-Perez with Deported Alien Found in the United States in violation of 8 U.S.C. § 1326(a) and (b) stating:

> On or about November 21, 2011, in the District of Idaho, the defendant, Daniel Rodriguez-Perez, an alien, was found in the United States, to wit: Ada County, Idaho, after having been previously removed from the United States to Mexico on or about June 28, 2007, at or near Laredo, Texas, the said defendant having not obtained the consent of the Secretary of the Department of Homeland Security for reapplication for

admission into the United States, in violation of Title 8, United States Code, Section 1326(a) and (b).

(Dkt. 1.) Following his arraignment, Mr. Rodriguez filed the instant Motion to Dismiss collaterally attacking the underlying deportation order. The Motion contends Mr. Rodriguez's July 10, 1995 deportation, upon which this charge is based, violated his due process rights. (Dkt. 15.) The Court has reviewed the materials submitted on the Motion and finds as follows.

## DISCUSSION

### 1.      Standard of Law

The Motion to Dismiss is brought pursuant to § 1326(d). "Because the underlying removal order serves as a predicate element of an illegal reentry offense under § 1326, a defendant charged with that offense may collaterally attack the removal order under the due process clause." *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004); *see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987) (finding a prior deportation order cannot serve as a predicate for a subsequent prosecution under 8 U.S.C. § 1326 when the deportation proceedings giving rise to the order were fundamentally flawed)). "[U]nder 8 U.S.C. § 1326(d), a defendant may collaterally attack the underlying removal order by showing first, exhaustion of 'any administrative remedies that may have been available to seek relief

**Memorandum Order - 4**

against the order;' second, that 'the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review;' and third, that 'the entry of the order was fundamentally unfair.'" *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010) (quoting 8 U.S.C. § 1326(d)); *see also Pallares-Galan*, 359 F.3d at 1095 (citing 8 U.S.C. § 1326(d)); *Ubaldo-Figueroa*, 364 F.3d at 1048.

2.      **Challenge To The Deportation Order**

Mr. Rodriguez challenges the validity of the underlying order of deportation arguing that the IJ improperly advised him of his eligibility for a waiver of deportation under § 212(c). (Dkt. 15.) The Government counters that § 212(c) was not available to Mr. Rodriguez as he did not meet the requirement in § 212(c) that he have seven years of lawful domicile in the United States. (Dkt. 16.)

A.      *Exhaust Administrative Remedies*

The Court finds the exhaustion requirement does not bar collateral review where, as here, Mr. Rodriguez alleges he was not properly informed that he was eligible for relief from removal. If true, any waiver of the right to appeal was neither "considered" nor "intelligent." *See United States v. Ortiz-Lopez*, 385 F.3d 1202, 1203-04 (9th Cir. 2004); *Ubaldo-Figueroa*, 364 F.3d at 1049-50. This case instead turns on the other remaining factors of whether Mr. Rodriguez was improperly deprived of the

opportunity for judicial review and whether the underlying deportation order was fundamentally unfair in light of the alleged failure to advise him as to his eligibility for § 212(c) relief.

**B.     *Judicial Review***

"The Due Process Clause of the Fifth Amendment requires that an alien in immigration proceedings be 'made aware that he has a right to seek relief' so that he has 'a meaningful opportunity to appeal the fact that he was not advised of that right.'" *See United States v. Melendez–Castro*, 671 F.3d 950, 954 (9th Cir. 2012) (quoting *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) ("[W]here the record contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue.") (internal quotations and citation omitted). "This includes providing an alien with the opportunity to apply for relief. An alien applying for such relief has a right to present evidence in support of the claim." *Id*. (citing *Arrieta supra* and 8 U.S.C. § 1229a(b)(4)(B); 8 C.F.R. § 1240.1(c); 8 C.F.R. § 1240.11(a)(2)).

A deportation proceeding violates due process if it prevents the deportee from knowingly and voluntarily waiving his rights. *Ubaldo-Figueroa*, 364 F.3d at 1048. "The government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings," but the defendant carries the overall burden to

**Memorandum Order - 6**

"show[ ]" fundamental unfairness. *Ramos*, 623 F.3d at 680.

Here, Mr. Rodriguez faults the IJ for failing to advise him of the possibility for relief under § 212(c) and giving him the opportunity to develop the issue. (Dkt. 17 at 9.) The Government maintains the IJ properly advised Mr. Rodriguez concerning his eligibility under § 212(c) given the law existing at the time of his 1995 deportation hearing. (Dkt. 16.)

An IJ has a duty to inform aliens of their eligibility for relief from removal. Immigration regulations require an IJ to inform an alien of "apparent eligibility" for relief. *United States v. Lopez-Velasquez*, 629 F.3d 894, 896 (9th Cir. 2010) (citing 8 C.F.R. § 1240.11(a)(2)). "Apparent eligibility" has been interpreted to mean "where the record, fairly reviewed by an individual who is intimately familiar with the immigration laws—as IJs no doubt are—raises a reasonable possibility that the petitioner may be eligible for relief." *Id.* at 896-97 (quoting *Moran–Enriquez v. INS*, 884 F.2d 420, 423 (9th Cir. 1989)). An IJ's "failure to so advise an alien violates due process and can serve as the basis for a collateral attack to a deportation order where, as here, the order is used as the predicate for an illegal reentry charge under § 1326." *Id.* (citing *Ubaldo–Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004)). The Ninth Circuit has held that an IJ's failure to inform an alien of possible eligibility for discretionary

relief constitutes a due process violation. *Lopez-Velasquez*, 629 F.3d at 897 n. 2.[1]

The IJ in this case informed Mr. Rodriguez that he did not qualify for § 212(c) relief because he had not been domiciled in the United States for the requisite seven years. In so doing, the IJ concluded that Mr. Rodriguez's years as a temporary resident as a SAW did not count towards the years of domicile for § 212(c) purposes. Only those years he had lived in the United States as a LPR, the IJ reasoned, could be counted towards the requisite seven years of domicile.

Prior to 1996, § 212(c) gave the Attorney General broad discretion to waive deportation in certain cases, stating:

> "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General ...."

*I.N.S. v. St. Cyr*, 533 U.S. 289, 295 (2001) (quoting 8 U.S.C. § 1182(c)). As applicable to this case, an alien had to have seven years of lawful unrelinquished domicile to be eligible for § 212(c) relief. *See* 8 U.S.C. § 1182(c). If relief was granted under § 212(c), the deportation proceeding was terminated and the alien remained a permanent resident. *See St. Cyr*, 533 U.S. at 295.

---

[1] The Government disputes that a IJ must inform an alien of possible discretionary relief from removal to satisfy due process but acknowledges that the Ninth Circuit's opinions hold otherwise. (Dkt. 16 at 5 n. 1.)

**Memorandum Order - 8**

In April of 1988, Mr. Rodriguez attained temporary legalized residency status under the SAW provisions in § 210 of the IRCA, 8 U.S.C. § 1160. He was given LPR status in October of 1991. Thus if his years under SAW are included, at the time of his deportation hearing Mr. Rodriguez had attained seven years of domicile. Without those years he falls short and would have been ineligible for § 212(c) relief. The question presented here is when did Mr. Rodriguez's years of lawful unrelinquished domicile began; at the time he attained temporary residency status under SAW or when he became a LPR.

Resolving this issue requires a look at the cases interpreting "domicile." In its 1979 decision in *Castillo-Felix v. INS*, the Ninth Circuit agreed with the INS interpretation of § 212(c)'s domicile requirement stating: "to be eligible for § [212(c)] relief, aliens must accumulate seven years of lawful unrelinquished domicile after their admission for permanent residence." *Castillo-Felix v. INS*, 601 F.2d 459, 467 (9th Cir. 1979) (holding that the seven years begins to run from the date the alien was admitted as a lawful permanent resident). Thereafter, in 1986, Congress passed the Immigration Reform and Control Act of 1986 ("IRCA") which provided a path to LPR status through certain programs for certain qualifying aliens. One such program was SAW which allowed aliens already working in the United States who had performed at least 90 days of agricultural work during the year ending May 1, 1986

**Memorandum Order - 9**

to apply for temporary resident status. *See* 8 U.S.C. § 1160. Aliens granted temporary resident status under SAW could adjust to LPR status after one or two years depending on whether they had worked at least 90 days in each of the years ending May 1, 1984, 1985, and 1986. *See* 8 U.S.C. § 1160(a)(2).

One month prior to Mr. Rodriguez's deportation hearing in 1995, the Ninth Circuit issued its decision in *Ortega de Robles*, wherein it held that domicile for aliens who were legalized under the general amnesty provision in § 245A IRCA, 8 U.S.C. § 1255a, began from the date of their application for amnesty when counting the seven years of domicile required for § 212(c) relief. *Ortega de Robles*, 58 F.3d at 1360-61. Thereafter, in September of 1996, relief under § 212(c) was repealed by Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") § 304. *See Ubaldo-Figueroa*, 364 F.3d at 1044. Mr. Rodriguez now seeks to apply the reasoning in *Ortega de Robles* to his circumstances to include his years as a temporary resident under § 210 in order to satisfy the seven year requirement for § 212(c) relief; arguing the IJ erred in concluding otherwise.

The IJ concluded the *Ortega de Robles* decision was limited to aliens who had received amnesty under § 245A and did not apply to SAW aliens. In order for Mr. Rodriguez, as well as the other similarly situated alien at the deportation hearing, to qualify for § 212(c) relief, the IJ stated, they had to show seven years of domicile as

**Memorandum Order - 10**

of the date they attained their LPR status. Because neither Mr. Rodriguez nor the other SAW alien at the hearing had LPR status for seven years, the IJ determined they did not qualify for § 212(c) relief and ordered them deported.

The Government argues the diverging nature of the amnesty provisions of IRCA and SAW support the IJ's conclusion that the decision in *Ortega de Robles* was limited to the amnesty domicile determination. (Dkt. 16 at 13.) Mr. Rodriguez counters that the precedent at the time of the hearing did not limit the years of domicile calculation to years in the United States as an LPR. (Dkt. 17 at 8.)[2] The Court agrees with the Government.

IRCA did not address § 212(c) relief or the definition of domicile when it created the SAW provisions. *Lopez-Velasquez*, 629 F.3d at 898. Although the Ninth Circuit acknowledged in *Ortega de Robles* that SAW's provisions were also enacted

---

[2] Furthermore, Mr. Rodriguez argues the case law subsequent to *Ortega de Robles* supports his interpretation of domicile. (Dkt. 17 at 6.) The cases cited by Mr. Rodriguez are somewhat different in that they involve the timing of the aliens' admissibility for purposes of their adjustment from temporary to permanent legal resident status. *See Perez-Enrique v. Gonzales*, 463 F.3d 1007 (9th Cir. 2006); *Gallegos-Vasquez v. Holder*, 636 F.3d 1181, 1188-89 (9th Cir. 2011). It could be argued, however, that these cases show the Ninth Circuit would have consider the date of attaining SAW temporary resident status as the beginning date for purposes of calculating years of unrelinquished domicile. *See Gallegos-Vasquez*, 636 F.3d at 1188-89. Following the same reasoning, the opposite inference can also be found in other Ninth Circuit case law. *See e.g. Valente-Narcizo v. Gonzales*, 139 Fed. Appx. 878, 881 (9th Cir. 2005) (stating the fact that the alien was "procedurally adjusted from temporary to LPR status under the SAW program does not mean that he can be considered 'lawfully admitted' for the purposes of establishing seven years of continuous residence, as required for § 212(c). When LPR status is granted in error the seven-year period does not accrue."). Because it does not appear the issue presented in this case was decided before the law was repealed, the inferences from subsequent case law is of limited value.

**Memorandum Order - 11**

under IRCA, it did not go on to determine whether its reasoning concerning § 245A
would also apply to SAW applicants. *See Lopez-Velasquez*, 629 F.3d at 898 (citing
*Ortega de Robles*, 58 F.3d at 1359 n. 5) (indicating that § 210, 8 U.S.C. § 1160, is a
provision similar to § 245A, 8 U.S.C. § 1255a); *see also White v. INS*, 75 F.3d 213,
215 & n. 3 (5th Cir. 1996). Just the opposite, the Ninth Circuit went on to recognize
a BIA decision which found that "a crucial distinction exists between temporary
residents under section 210 of the Act on the one hand, and aliens eligible for
adjustment under section 245A." *Ortega de Robles*, 58 F.3d at 1360 n. 6. In that BIA
decision, the court stated that "lawful temporary residents under section 210 may not
apply for a waiver of inadmissibility under section 212(c) of the Act...as that form of
relief is limited to lawful permanent residents." In *Matter of Chavez-Calderon*, Int.
Dec. 3212, 1993 WL 495141, at *4 (BIA Nov. 4, 1993). By recognizing the
distinction between § 210 and § 245A, the Ninth Circuit effectively limited its
interpretation of domicile in *Ortega de Robles* to § 245A. Moreover, the reasoning of
the *Ortega de Robles* decision itself evidences that it was intended to apply to § 245A.
In distinguishing *Castillo-Felix*, the Ninth Circuit's decision in *Ortega de Robles*
centered on the underlying purpose of the amnesty program which was to afford a
pathway to permanent residency status to aliens who had established a domicile for
a period of years and who evidenced an intention to remain. Such an intention to

**Memorandum Order - 12**

remain is apparent in § 245A amnesty cases but is not as readily apparent for those aliens falling under § 210's SAW provisions. Because the Ninth Circuit's reasoning in *Ortega de Robles* was narrowly construed to § 245A and actually distinguished § 210 of IRCA, relief under § 212(c) was not a reasonable possibility when the IJ reviewed the record at the 1995 deportation proceeding. As such, the Court concludes the IJ did not violate Mr. Rodriguez's due process rights because it was not apparent that Mr. Rodriguez was eligible for § 212(c) relief.

### C.   *Fundamentally Unfair*

"An underlying removal order is fundamentally unfair if an alien's 'due process rights were violated by defects in the underlying deportation proceeding,' and if 'he suffered prejudice as a result of the defects.'" *Ramos*, 623 F.3d at 680 (quoting *Pallares-Galan*, 359 F.3d at 1095); *see also Ubaldo-Figueroa*, 364 F.3d at 1048; *United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th Cir. 2000). To show prejudice, the Defendant "must only show that he had a plausible ground for relief from deportation." *Ubaldo-Figueroa*, 364 F.3d at 1050 (internal quotation marks omitted). As determined above, Mr. Rodriguez has not shown that he had a plausible ground for relief from deportation. Accordingly, he suffered no prejudice and the is denied.

## ORDER

Based on the foregoing and being fully advised in the premises, the Court

HEREBY **DENIES** Defendant's Motion to Dismiss. (Dkt. 15.) The trial in this matter

is set for **Tuesday, July 24, 2012 at 9:30 a.m. in Boise, Idaho**.


DATED: **June 29, 2012**


Honorable Edward J. Lodge
U. S. District Judge


**Memorandum Order - 14**